FILED
CLERK

6/25/2013 11:29 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
82-11 QUEENS BOULEVARD REALTY,
CORP.,

                Plaintiff,           **MEMORANDUM OF
DECISION AND ORDER**
     -against-           11-CV-05144 (ADS)(ETB)

SUNOCO, INC. (R&M),

                Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Robinson & Associates, P.C.**
*Attorneys for the Plaintiff*
35 Roosevelt Ave.
Syosset, NY 11791
    By:   Kenneth L. Robinson, Esq.
            Theodore W. Firetog, Esq.
            Jonathan Bartov, Esq., of Counsel

**Reed Smith LLP**
*Attorneys for the Defendants*
599 Lexington Ave.
New York, NY 10022
    By:   Othiamba N. Lovelace, Esq.
            Henry F. Reichner, Esq.
            Michael C. Falk, Esq., of Counsel

**SPATT, District Judge.**

       On September 15, 2011, the Plaintiff 82-11 Queens Boulevard Realty Corp. (the "Plaintiff" or "QBRC") brought this action against the Defendant Sunoco, Inc. (R&M) (the "Defendant" or "Sunoco") seeking damages and indemnification under an existing contract entered into between the parties as well as attorney's fees and expert fees pursuant to the New York Navigation Law. Presently before the Court is the Defendant's Motion for Summary

Judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

The following facts are undisputed and are drawn from the parties' Section 56.1 statement of facts and the motion papers.

On November 30, 1998, the Plaintiff entered into an Agreement of Sale (the "Agreement") to purchase the Defendant's lot and gas station located at 82-11 Queens Boulevard in Queens, NY. On December 21, 1998, QBRC took title to the property and it has been continuously operated as a retail gasoline station since that date.

The Agreement provides that the Plaintiff accepts the premises in an "as is" condition. Nevertheless, the Agreement sets forth a base line of contamination at the site for which Sunoco is responsible to report contamination to the New York State Department of Environmental Conservation ("NYSDEC"). In addition, Sunoco is to perform any investigation, monitoring, or remediation required as a result by the NYSDEC. This base line derives from the Defendant's Environmental Assessment and Remediations Co. report dated March 1998. The Agreement reads in pertinent part:

> If the environmental assessment . . . reveals the presence of contamination which [Sunoco] believes is reportable to the [NYSDEC] . . . [Sunoco] will report the contamination and assume responsibility at its cost and expense for satisfying the requirements of [Sunoco] if an additional investigation, monitoring or remediation is required.

(Answer Ex. C § 12.)

A further agreement entitled "Ex. 'D' Indemnity and Right of Access Agreement" ("Ex. D") is attached to the Agreement of Sale. Ex. D requires the Defendant to conduct an environmental investigation if such an investigation is mandated by the NYSDEC. If, as a result

2

of that investigation, the NYSDEC requires monitoring or remediation of contamination, Sunoco agrees to satisfy the NYSDEC requirements at its own cost and expense. Ex. D provides in relevant part:

> 1. [Sunoco], at its cost and expense will conduct the environmental investigation of the premises [that the NYSDEC requires or may require] to comply with the requirements of the [NYSDEC].
>
> 2. If, as a result of this investigation, [Sunoco] is required by the [NYSDEC] to conduct monitoring or remediation of contamination which emanated from [Sunoco]'s former facility, [Sunoco] at its own cost and expense, will conduct the monitoring or perform said remediation using a method it selects. [Sunoco] will continue the monitoring or remediation until the contamination which emanated from the former [Sunoco] facility is reduced to levels satisfactory to the [NYSDEC].

(Answer Ex. D ¶ 2.)

Prior to the sale and while Sunoco owned and managed the station, three incidents of gasoline spillage were reported to the NYSDEC as required by law. The NYSDEC assigned each of these spills a spill number ("pre-sale spill numbers").

On February 12, 1988, the NYSDEC assigned spill number 8709615 to a spill of 50 gallons of gasoline at 82-11 Queens Boulevard. The NYSDEC closed that spill number the same day, indicating that any necessary measures had been taken and that no further action was required. Nonetheless, the NYSDEC reserved the right to require additional remedial work related to that spill at a later date.

On August 2, 1989, a tank test failure at 82-11 Queens Boulevard led to the issuance of spill number 8904398 by the NYSDEC. The NYSDEC reported an unknown amount of gasoline released in that spill and that the groundwater had been contaminated as a result. On December 16, 2005, the NYSDEC closed spill number 8904398 and indicated that no further action was

3

necessary. Again, the NYSDEC reserved the right to require additional work related to the spill in the future.

On August 7, 1989, the NYSDEC issued spill number 8904549. On November 28, 2001, Sunoco received a letter from the NYSDEC indicating that no further action was necessary by Sunoco with regard to that spill. The NYSDEC again retained the right to require further action in the future.

After December 16, 2005, the NYSDEC did not order any additional investigation, monitoring, or remediation at the site. (Pl.'s Resp. to Def.'s First Set of Reqs. for Admis. ¶ 9.)

On April 2, 2010, conditions in the basement of an apartment building at 82-15 Queens Boulevard adjacent to the gas station at 82-11 Queens Boulevard revealed the presence of gasoline or oil contamination in the ground water below the apartment building. The NYSDEC issued spill number 1000067 that same day in connection with the gasoline found in the basement of 82-15 Queens Boulevard. The NYSDEC spill number 1000067 report lists no known spiller or source of the gasoline.

Indeed, the NYSDEC spill number 1000067 report only identifies QBRC in a section entitled DEC Remarks. The report notes that an NYSDEC employee performed an inspection of QBRC's property following the leak and found no evidence of a leak. The spill number report further notes that QBRC scheduled a tank test for April 4, 2010 and that, on April 6, 2010, an NYSDEC employee delivered a letter to the owner of QBRC, requesting that he perform a subsurface investigation within 10 days.

QBRC admits that it was not ordered by the NYSDEC to do any investigation or remediation. (Pl.'s Resp. to Def.'s First Set of Reqs. for Admis. ¶ 9.) The Plaintiff also admits

4

that it has not received any approval by the NYSDEC for a remediation plan or remediation costs or activities. (Pl.'s Rule 56.1 Counterstatement ¶ 22.)

Shortly after the NYSDEC request of April 6, 2010, QBRC hired an expert, Charles Sosik ("Sosik"), to perform an investigation of its property. Sosik's investigation uncovered contamination in the ground at 82-11 Queens Boulevard. It is the opinion of QBRC based on Sosik's reports that the contamination probably stems from spill number 8904398. Whether the contamination found by Sosik is pre-sale contamination remains a disputed fact. (Decl. of Adelmo Cioffi ¶ 13(a).) Sunoco urges that spill number 8904398 was closed by the NYSDEC and that no finding has been made, by the NYSDEC or otherwise, conclusively establishing a connection between the August 2, 1989 contamination of spill number 8904398 and that of the April, 2, 2010 spill number 1000067.

On September 15, 2011, the Plaintiff filed suit in the Supreme Court of the State of New York, County of Nassau, seeking reimbursement from Sunoco for the costs of investigation conducted after the discovery of spill number 1000067 in 2010. The Plaintiff also seeks to hold Sunoco responsible for completing remediation of 82-11 Queens Boulevard as well as attorney's fees and expert fees incurred in connection with this matter.

In particular, the Plaintiff brings three causes of action in seeking this relief. First, the Plaintiff alleges breach of contract. The Plaintiff also brings a cause of action under the same contract for indemnification of future costs of remediation. Finally, the Plaintiff claims a right to reimbursement under New York State Navigation Law which would include reimbursement of attorney's fees and expert fees.

On October 21, 2011, the Defendant removed the case pursuant to 28 U.S.C. §§ 1441, 1446 and 1332 to this Court based on diversity of citizenship jurisdiction. Presently before the

Court is the Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 on all three of the Plaintiff's claims. The Defendant contends that the contract makes it liable only for NYSDEC orders related to 82-11 Queens Boulevard and no such order has been issued in this matter. The Defendant further contends that the Plaintiff's New York Navigation Law claim is barred by the Statute of Limitations.

The Defendant's Rule 56.1 Statement of Facts violated the Individual Motion Practices of this Court which prohibit the attachment of exhibits to the Statement of Facts. INDIVIDUAL MOT. PRACTICES OF JUDGE ARTHUR SPATT IV(D)(i) ("Exhibits shall not be attached to Rule 56.1 statements."). Nonetheless, the Court has discretion to consider documents filed in violation of procedural rules. See, e.g., Anghel v. N.Y. State Dept. of Health, No. 2:12-CV-03484(ADS)(WDW), 2013 WL 2338513, at *3 (E.D.N.Y. May 29, 2013). Therefore, the Court has considered the Defendant's exhibits where it has found them useful.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must "be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is on the party moving for summary judgment to establish the absence of any genuine issues of material fact, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986), and any ambiguities must be resolved in favor of the non-movant, see Celotex Corp. v. Catrett, 477 U.S. 317, 330 n. 2, 106 S. Ct. 2548, 2556 n. 2, 91 L. Ed. 2d 265 (1986).

"When the movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed. R. Civ. P. 56(e)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Id. (internal quotation marks and citations omitted). Lastly, the existence of disputed facts that are not material to the issues at hand may not defeat summary judgment. Id. In other words, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Liberty Lobby, 477 U.S. at 248, 106 S. Ct. at 2510.

**B. As to the Plaintiff's Breach of Contract and Indemnification Claims**

**1. Governing Law**

A federal court exercising diversity jurisdiction must apply the substantive law of the forum state. Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) ("[T]he law to be applied in any case [in federal court pursuant to diversity jurisdiction] is the law of the state."). Choice-of-law questions are also resolved based on the laws of the state in which the district court sits. See Hammond-Warner v. United States, 797 F. Supp. 207, 209 (E.D.N.Y. 1992) (citing Klaxon Co. v. Stentor Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941).

"It is well established in New York that the construction and validity of a contract is governed by the laws of the place where it is made unless the parties indicated otherwise." In re Shangri-La Nursing Center, Inc., 31 B.R. 367, 370 (Bankr. E.D.N.Y. 1983) (citing Auten v. Auten, 308 N.Y. 155, 160, 124 N.E.2d 99 (1954)); Union Nat'l Bank v. Chapman, 169 N.Y. 538,

7

545, 62 N.E. 672 (1902)). Thus, a contract executed in New York and litigated in a district court sitting in New York while exercising diversity jurisdiction must be interpreted pursuant to New York law. Hammond-Warner, 797 F. Supp. at 209 (citing Shangri-La Nursing Center, 31 B.R. at 370) ("The [contract] was executed in New York and is therefore interpreted pursuant to New York law."). Therefore, the Agreement of Sale and all other agreements executed with it will be interpreted pursuant to New York law.

### 2. Contract Interpretation

Under New York law, unambiguous contracts are interpreted as a matter of law. See Metro. Life Ins. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990)) ("Under New York Law, contracts are interpreted . . . by the court as a matter of law when the contract language is unambiguous."); Alt. Thinking Sys., Inc. v. Simon & Schuster, Inc., 853 F.Supp. 791, 795 (S.D.N.Y. 1994) (citing Am. Express Bank v. Uniroyal, Inc., 164 A.D.2d 275, 277, 562 N.Y.S.2d 613 (1st Dept. 1990)) ("Under New York Law, if a contract is unambiguous on its face, its interpretation is a question of law."); Hammond Warner, 797 F.Supp. at 209 (citing Cruden v. Bank of N.Y., 957 F.2d 961, 976 (2d Cir. 1992); Nat'l Title Ins. Agency v. Cadlerock Props. Joint Ventures, 5 A.D.3d 361, 362, 773 N.Y.S.2d 86 (2d Dept. 2004) (quoting Riley v. S. Somers Dev. Corp., 222 A.D.2d 113, 117, 644 N.Y.S.2d 784 (2d Dept. 1996)) ("Where the contract . . . is unambiguous, its interpretation is a matter of law.") (internal quotation marks omitted); 1500 Fifth Ave. Bay Shore, LLC v. 1550 Fifth Ave., LLC, 297 A.D.2d 781, 783, 748 N.Y.S.2d 601 (2d Dept. 2002) (citing 805 Third Ave. Co. v. M.W. Realty Assocs., 58 N.Y.2d 447, 451 461 N.Y.S.2d 778, 448 N.E.2d 445 (1983)) ("The interpretation of a contract is a matter of law for the court.").

However, when the contract language is ambiguous, meaning that there may be more than one reasonable interpretation, its construction will be left to the fact finder for a determination as a matter of fact. Yanuck v. Simon Paston & Sons Agency, 209 A.D.2d 207, 208, 618 N.Y.S.2d 295 (1st Dept. 1994) (citing Amusement Bus. Underwriters v. Am. Int'l Group, 66 N.Y.2d 878, 880, 498 N.Y.S.2d 760, 489 N.E.2d 729 (1985) ("[W]here [the contract is ambiguous, in that] interpretation of contract terms or provisions are susceptible to at least two reasonable interpretations, and the intent must be gleaned from disputed evidence or from inferences outside the written words, it becomes an issue of fact that must be resolved by trial.").

Nevertheless, even ambiguous contracts may be interpreted by a court as a matter of law where the parties fail to supply extrinsic evidence to support their respective interpretations. See Anesthesia Assocs. of W. Suffolk, 203 A.D.2d 454, 455, 610 N.Y.S.2d 606 (2d Dept. 1994) (granting a motion for summary judgment on a breach of contract claim despite contractual ambiguity because the opposing party failed to tender any extrinsic evidence supporting its interpretation); Penguin 3rd Ave. Food Corp. v. Brook Rock Assocs., 174 A.D.2d 714, 715, 571 N.Y.S.2d 562, 564 (2d Dept. 1991) ("In addition to alleging that the contract is ambiguous, the opponent must also set forth in evidentiary form the extrinsic evidence upon which it relies to support the construction it urges."). In such a case, a court must consider the available writings and the undisputed circumstances of execution so as to discern the parties' intentions. See Mallad Constr. Corp. v. Cnty. Fed. Sav. & Loan Ass'n, 32 N.Y.2d 285, 293, 344 N.Y.S.2d 925, 298 N.E.2d 96 (1973).

In short, summary judgment is appropriate where either, 1) the contract is unambiguous, 2) the contract is ambiguous but extrinsic evidence presented by the parties resolves any

ambiguity, or 3) the contract is ambiguous but the opposing party fails to tender extrinsic evidence supporting its proposed interpretation.

**3. Is the Agreement of Sale Ambiguous?**

The point of contention in this dispute lies in Section 12 and Ex. D of the Agreement of Sale. In particular, the Plaintiff contends that under the agreement, the Defendant is liable for the costs associated with requests for investigation and remediation, not only mandated actions. On the other hand, the Defendant insists that it is liable only for costs associated with an NYSDEC requirement of investigation or remediation connected to a pre-sale spill.

Whether the NYSDEC-requested investigation of June 2010 is connected to a pre-sale spill is a disputed issue of fact. Nevertheless, the Court finds that this fact is immaterial for purposes of this summary judgment motion because even if spill number 1000067 is connected to a pre-sale spill number, Sunoco is not responsible until the NYSDEC orders an investigation, monitoring, or remediation.

Indeed, the Court is not convinced that the contract is in fact ambiguous. The clear language of the contract reads that Sunoco will assume responsibility for: "satisfying the *requirements* of the [NYSDEC] if an additional investigation, monitoring or remediation is *required*." (emphasis added). Similarly, Ex. D reads: "[Sunoco], at its cost and expense, will conduct the environmental investigation of the premises *necessary* to comply with the *requirements* of the [NYSDEC]." (emphasis added.) These contractual provisions state that only NYSDEC "requirements" trigger Sunoco's obligation to indemnify QBRC. The Court concludes that an NYSDEC order is a required action in contrast to an NYSDEC request of the type delivered to QBRC on April 6, 2010. Therefore, Section 12 and Ex. D of the Agreement of

Sale do not make Sunoco responsible for the investigation requested by the NYSDEC as that was not an NYSDEC required action.

Moreover, even if the Court agreed with the Plaintiff that the contract language is ambiguous, the Defendant's Motion for Summary Judgment must be granted. The Plaintiff has not tendered any extrinsic evidence relating to the parties' intention to support its construction and therefore its claim of ambiguity does not suffice to defeat summary judgment. See Anesthesia Assocs., 610 N.Y.S.2d at 607-08; Penguin 3rd Ave., 571 N.Y.S.2d at 564. Accordingly, the Court must interpret the contract as a matter of law, considering the document itself and the undisputed circumstances surrounding its execution. See Mallad Const., 32 N.Y.2d at 293.

The only relevant circumstances brought to the Court's attention are the NYSDEC spill numbers, two of which remained open at the time of sale. These spill numbers merely demonstrate that the parties may in fact have been concerned about open spill numbers at the time of contract. They do not help establish whether the parties intended for Sunoco to be held responsible for any NYSDEC request or only for an NYSDEC order. On the one hand, it is plausible that an NYSDEC order was required because Sunoco insisted on adequate protection and predictability going forward. On the other hand, it is equally plausible that QBRC insisted on indemnification for any and all actions requested by the NYSDEC related to those spills so that even an NYSDEC request sufficed. Because the undisputed circumstances do not help resolve the only possible ambiguity, the Court is left with the document itself. As explained above, the Agreement of Sale plainly refers to an NYSDEC required action. Only an NYSDEC order can be characterized as an NYSDEC required action, as an NYSDEC request is just that – a request, not a requirement.

11

For those reasons, the Plaintiff's claims for reimbursement and indemnification pursuant to the Agreement of Sale are dismissed.

**C. As to the Plaintiff's Navigation Law Claim**

The Court finds that the Plaintiff's Navigation Law claim is barred by the Statute of Limitations. The applicable Statute of Limitations for an action to recover damages for an injury to property under New York law is three years. New York Civil Practice Law & Rules ("N.Y. CPLR") § 214(4) (MCKINNEY 2004). The Plaintiff insists that this is an action for remediation required by New York State law and is therefore an implied contractual obligation for which the applicable Statute of Limitations is six years under N.Y. CPLR 213(2) (MCKINNEY 2004). See State of New York v. Stewart's Ice Cream Co., 64 N.Y.2d 83, 86, 484 N.Y.S.2d 810, 473 N.E.2d 1184, 1185 (1984) (applying the six-year Statute of Limitations in a case where New York State cleaned up a spill for which the Defendant was responsible explaining that it was a case of indemnity and an implied contract is created when a third party assumes another's debt or obligation).

As an initial matter, based on the determination above that the Plaintiff's actions were not required by the NYSDEC, it follows that remediation is not an implied contractual obligation because it was not a debt or obligation of the Defendant. To recover under the six-year remediation statute of limitations, the Plaintiff must show that a debt or obligation was owed by Sunoco which the Plaintiff fulfilled. See Stewart's Ice Cream Co., 64 N.Y.2d at 86 (characterizing the case as one for indemnity and subject to a six year Statute of Limitations because "[t]he State . . . incurred expenses to perform a duty primarily owed by the . . . defendant"). "Unlike a suit against a discharger initiated by [a State agency] for [reimbursement], which is an action in indemnity and subject to a six-year Statute of Limitations,

a suit [as here, by the private landowner] against a discharger is one for damages caused by injury to property and is subject to a three-year Statute of Limitations." Town of Guilderland v. Texaco Refining & Marketing, Inc., 552 N.Y.S.2d 704, 706 (3d Dept. 1990) (internal quotation marks and citations omitted).

The Plaintiff's reliance on FCA Associates v. Texaco, Inc., No. 08-CV-6083T, 67 ERC 1058, 2008 WL 314511 (W.D.N.Y. Feb. 4, 2008) is misguided. Although the FCA court implies in dictum that remediation damages would be compensable under New York's Navigation Law, Id. at *9, the remediation costs incurred in that case were incurred under the order of the NYSDEC, Id. at *3-4. By contrast, in the present case, no remediation order has issued from the NYSDEC. Injury to the property at 82-11 Queens Boulevard for which the Plaintiff seeks damages in order to remediate the property are not remediation damages. They are comparable to the property damage in FCA Associates which remained after the NYSDEC closed the case and for which that court found that the three-year Statute of Limitations applied.

Because the Plaintiff failed to file this action within the appropriate three-year period, the Plaintiff's New York Navigation Law claims are hereby dismissed as time barred.

### III. CONCLUSION

For the foregoing reasons, it is hereby,

**ORDERED** that the Defendant's Motion for Summary Judgment is granted; and it is further

**ORDERED** that the Plaintiff's Complaint is dismissed with prejudice; and it is further

**ORDERED** that the Clerk is directed to close the case.

**SO ORDERED.**
Dated: Central Islip, New York
June 25, 2013

/s/ *Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge